IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AMY FITCH, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | CASE NO.  1:20-cv-513-RAH |
| | ) | [WO] |
| UNITED STATES OF | ) | |
| AMERICA, *et al.*, | ) | |
| | ) | |
| Appellees. | ) | |

## MEMORANDUM OPINION AND ORDER

Amy Fitch appeals from the final determination of the Director of the United States Department of Agriculture's (USDA or the Agency) National Appeals Division that upheld the hearing officer's decision to retroactively deny Fitch's claim for benefits under the Noninsured Crop Disaster Assistance Program (NAP). The issues have been fully briefed, and each party has moved for summary judgment. For the reasons below, Fitch's motion is DENIED, the USDA's motion is GRANTED, and the Director's decision is affirmed.

### I. BACKGROUND

Fitch Family Farms is a commercial vegetable family farm located in Houston County, Alabama, run by Lee and Amy Fitch and their company, River Road Farms, Inc. (RRF). Amy Fitch owns 40% of RRF and is a guarantor on a loan procured by RRF from Servis1st Bank to fund its operations.

1

For the 2016 crop year, Fitch, in her individual capacity, enrolled a tomato crop in NAP that was to be grown on land owned by RRF.  By enrolling individually and because she could qualify as a socially disadvantaged farmer, Fitch saved money, including an administrative fee and half of the NAP premium. This financial benefit was unavailable to RRF, which was already separately enrolled in NAP.

Ultimately, the tomato crop failed, and therefore Fitch filed a claim for payment in July 2016 with the Farm Service Agency (FSA) of the USDA.  The loss was adjusted, and the claim was approved for payment by the local Houston County FSA committee in September 2016. The claim was paid, and Fitch apparently re-enrolled and received NAP payments in 2017 and 2018.

Not too long after the 2016 crop season, the Office of the Inspector General (OIG) began investigating fraud by the Houston County FSA committee for the claims it had approved during the 2016 crop year.  The OIG found complicity by the committee in approving fraudulent claims in 2016, which resulted in a review of claims approved by the committee in 2016. Fitch's 2016 claim was one of the claims reviewed.

After reviewing Fitch's claim, on May 9, 2019, the USDA[1] reversed the Houston County FSA committee's September 2016 claim decision, finding that

---

[1] The USDA, Agency, and FSA are used interchangeably.

Fitch had been ineligible for the 2016 NAP payment because, among others, Fitch had made misrepresentations (that she shared in 100% of the tomato crop as a producer) concerning her eligibility for payment. As to Fitch's eligibility, the USDA concluded that Fitch was not a "producer" as defined under NAP because Fitch "did not share in the risk of producing the crop" and was not entitled to share in the crop available for marketing.    (Doc. 28-3 at 27.) Therefore, Fitch was deemed retroactively ineligible for the 2016 NAP payment, and as a further sanction, she was also deemed ineligible for program payments in the two successive years of 2017 and 2018.  All told, the USDA sought a refund from Fitch for all three years of NAP payments, totaling approximately $85,000.

Fitch appealed to the National Appeals Division,[2] and a hearing officer was assigned and conducted an in-person evidentiary hearing over three days in October, November, and December 2019. On February 19, 2020, the hearing officer issued his appeal determination.  Of the numerous issues raised, the hearing officer found in Fitch's favor on all, except for two—that Fitch was an eligible producer and that NAP's Finality Rule applied. As applicable to the producer issue, the hearing officer concluded:

> …the information presented by Appellant fails to show that she was

---

[2] The National Appeals Division is responsible for adjudicating specified administrative appeals from adverse decisions by certain agencies within the USDA, including the Commodity Credit Corporation, the Farm Service Agency, and the FSA state, county, and area committees, including appeals from the "[d]enial of participation in, or receipt of benefits under, any program of an agency[.]" *See* 7 U.S.C. §§ 6991-7002; 7 C.F.R. § 11.1; 7 C.F.R. § 11.3.

operating as an individual. The land that Appellant grew her tomatoes on is owned by River Road Farms. The only input receipt in the record is for River Road Farms. All evidence shows that River Road Farms, not Appellant, had a risk in growing the crop and was entitled to share in the crop had the crop been produced. While Appellant argues that it is a normal farming operation to operate within an entity of a family farming operation, Appellant did not sign up for NAP coverage for River Road Farms and, in fact, River Road Farms had its own NAP coverage in 2016. Appellant's failure to show how her interest in the crop was separate and distinct from River Road Farms does not justify a separate payment to Appellant, when Appellant was clearly operating under the pretense of River Road Farms. Appellant is not an eligible producer who was eligible for NAP benefits and she misrepresented that she is a producer who shares in the risk of producing the crop and who is entitled to share in the crop had the crop been produced.

(Doc. 23-3 at 103.)

And as to the Finality Rule, the hearing officer concluded that the "misrepresentation" exception applied because "Appellant misrepresented that she is a producer who shares in the risk of producing the crop and who is entitled to share in the crop had the crop been produced." (Doc. 23-3 at 104.)

Fitch then appealed to the Director of NAD, challenging the hearing officer's decision and requesting equitable relief. Upon reviewing the record and the parties' submissions, the Director concluded that the hearing officer's decision was "supported by substantial evidence" and that the "county committee's decision approving her NAP program claim was erroneous." (Doc. 23-3 at 123–24.) And as to the Finality Rule, the Director concluded that the rule, because of Fitch's misrepresentations about her status as an eligible producer, did not bar the USDA

from, after the fact, seeking a refund of the NAP payments made to Fitch in 2016, 2017, and 2018.  Finally, as to Fitch's claim for equitable relief, the Director denied the request, concluding that Fitch had failed to show that her ineligibility stemmed from erroneous actions or misrepresentations by an agency official. Instead, the Director concluded that Fitch's predicament stemmed from her choice to enroll in NAP individually. This decision constituted the USDA's final decision under 7 U.S.C. § 6999.

## II.  STANDARD OF REVIEW

Summary Judgment is particularly appropriate in cases in which a district court is asked to review a decision rendered by a federal administrative agency. *Mahon v. United States Dep't of Agric.*, 485 F.3d 1247, 1253 (11th Cir. 2007). However, even in the context of summary judgment, an agency action is entitled to great deference. *Id*.

Judicial review of a final agency determination is governed by the Administrative Procedure Act, which provides in part that a court may set aside an agency's "action, findings, and conclusions" if they are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, or unsupported by substantial evidence. *Id*. (citing 5 U.S.C. § 706). *See also* 7 U.S.C. § 6999; *Payton v. United States Dep't of Agric.*, 337 F.3d 1163, 1167 (10th Cir. 2003).

5

"To determine whether an agency decision was arbitrary and capricious, the reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990) (internal quotations omitted). The arbitrary and capricious standard is exceedingly deferential, *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996), and "[t]he reviewing court is not authorized to substitute its judgment for that of the agency concerning the wisdom or prudence of the" decision, *N. Buckhead*, 903 F.2d at 1539. "Rather, the 'task of the reviewing court is to apply the appropriate ... standard of review ... to the agency decision based on the record the agency presents to the reviewing court." *Pres. Endangered Areas of Cobb's History, Inc. v. United States Army Corp of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)) (internal quotation marks omitted).

## III.  DISCUSSION

The parties have filed opposing summary judgment motions that address three issues—Fitch's status as an eligible producer under NAP, NAP's Finality Rule, and Fitch's entitlement to equitable relief.

To begin, NAP provides financial assistance to producers of non-insurable crops to protect against natural disasters that result in lower yields or crop losses or

prevent crop planting. The program is administered under the general supervision of the Commodity Credit Corporation and is carried out by the local state and county committees of the FSA. *See Mahon v. United States Dep't of Agric.*, 485 F.3d 1247, 1253 (11th Cir. 2007); 7 C.F.R § 718.2. Eligible producers must apply for NAP coverage using form CCC-471 and pay a service fee and a premium.

Pertinent to the issues on appeal here are several defined terms under NAP — "producer," "person," and "operator." The relevant regulations define a "producer" as "an owner, operator, landlord, tenant, or sharecropper, *who shares in the risk of producing a crop* and *who is entitled to share in the crop* available for marketing from the farm, or would have shared had the crop been produced." 7 C.F.R § 718.2; 7 U.S.C. § 7202(12) (emphasis added). A "person" is defined as someone who must "(1) Have a separate and distinct interest in the land or the crop involved;  (2) Exercise separate responsibility for such interest; and (3) Be responsible for the cost of farming related to such interest from a fund or account separate from that of any other individual or entity." 7 C.F.R. § 718.2. Finally, NAP regulations define an "operator" as "an individual, entity, or joint operation who is determined by the FSA county committee to be in control of the farming operations on the farm." *Id.*

### A.    The USDA did not act arbitrarily or capriciously in determining Fitch was not an "eligible producer."

As it concerns the Director's finding that Fitch was not an eligible producer, Fitch provides five reasons for why the decision was "arbitrary and capricious and

unsupported by a preponderance of the evidence." (Doc. 30 at 15.) First, Fitch references the special treatment of family farms in the congressional farm bills passed in 2014 and 2018.  Second, she argues that she shared in the risk of the crop through RRF because she shared in 40% of the profits and losses of RRF as part owner. Third, she argues that as a spouse of a farmer actively engaged in farming, and therefore sharing in the risk of the crop, she should be deemed as sharing in the risk through him.  Fourth, she argues that even if not deemed to share in the risk through her husband, because she provided personal labor and personal management over the crop, she received income based on the farm's operating results and therefore shared in the risk of the crop.  Fifth, Fitch argues that there is evidence in the record that she received $96 for 12 boxes of tomatoes from the tomato plot, which was not referenced by either the hearing officer or the Director in their decisions, and which shows she directly shared in the risk of the crop.

The USDA counters that the record confirms that Fitch did not share in the risk of producing the tomato crop, and therefore the underlying decisions were not arbitrary, capricious, or otherwise not in accordance with the law.  It further argues that Fitch's claimed eligibility as a producer was based on her status as an owner of RRF, a separate producer, and not her own individual status as a person. Therefore, so the argument goes, Fitch failed to show how she operated separately from RRF for NAP purposes.

As noted, the applicable regulations define an eligible producer as an owner, operator, tenant, or sharecropper "who shares in the risk" of producing a crop and who is entitled to share in the crop if it is produced. 7 C.F.R. § 718.2. These regulations also require producers to provide "acceptable evidence" of "an interest in the commodity being produced or control of the crop acreage on which the commodity was grown at the time of the disaster . . . [and] [t]he producer's risk in the crop." 7 C.F.R. § 1437.8(c).[3]

Here, the evidence presented by Fitch to the hearing officer as it concerns her producer status falls into two buckets. First, there is physical evidence, including: (1) an input receipt for seed and fertilizer; (2) two alleged tomato sales receipts, one of which contained Fitch's handwritten name; (3) a commercial loan agreement executed by RRF; (4) a personal guaranty of that loan executed by Fitch; (5) a letter from Servis1st Bank setting forth Fitch's 100% personal liability for the indebtedness of the family farm; (6) the CCC-471 (NAP application) and notice of loss in Fitch's individual name; (7) a CCC-578 acreage report in Fitch's name; and (8) a Grower's Permit containing the names of RRF, Lee Fitch, and Amy Fitch.

---

[3] An agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins,* 519 U.S. 452, 461 (1997). *See also Sierra Club v. Johnson*, 436 F.3d 1269, 1274 (11th Cir. 2006). However, to decide this appeal, the Court need not determine whether the bright-line rule of requiring input receipts as proof of "shar[ing] in the risk" of a crop is a plainly erroneous interpretation of the agency regulation because, even assuming so, there is insufficient evidence in the record to support that Fitch shared in the risk in any other potential way.

And second, there is testimonial evidence from Fitch, including that: (1) she is married to Lee Fitch, a farmer; (2) she is part owner of RRF; (3) RRF is a family farm; (4) she was involved in managing the books of the family farm; (5) she personally farmed crops for 6 to 8 years and for RRF for 17 years; and (6) 2016 was the first year she had personally grown crops on that parcel even though RRF had previously grown crops there. She also cites to her testimony that "on any harvest we hire a crew," thereby implying that she personally would have hired the crew that would harvest the tomato crop had it been successful. (Doc. 23-3 at 45.)

None of this evidence proves that Fitch, personally, shared in any degree of risk of the tomato crop. Fitch's assertions—such as that she "manages, pays bills, and oversees the planting and harvest of her crops," "remained responsible for expenses," "provided personal management," and "worked her crop"—are unsupported by the record. (Doc. 30 at 10–11, 18–19.) Moreover, as the Director noted, Fitch failed to present documentation or information showing that Fitch, personally, had any direct input or investment in the tomato crop, rather than derivatively through her role with RRF, whether that be seed and feed expenses, labor expenses, or sweat labor on her part. And as to the one item of evidence regarding input, the Director noted, and correctly so, that it was a purchase receipt showing the purchase of seed and fertilizer by RRF, not Fitch.

Fitch points to two documents that she claims constitute receipts that show

she owned the tomato crop and received income from it. These two documents, on their face, show little if anything regarding Fitch's risk or share in the crop because she never presented testimonial evidence supporting these assertions. Instead, these two documents were submitted by Fitch to the hearing officer after the in-person hearing had concluded and therefore they were submitted without any testimony of what they proved or showed. No context was given to them, such as who sold the tomatoes, where the tomatoes came from, where the money went, and whether this was even reflective of the sale of tomatoes from the subject plot. That Fitch's name is handwritten across one of them proves nothing, especially without supporting testimony that gives them context.[4]

Fitch also places much emphasis on her risk attributable through her ownership interest in RRF, being the spouse of Lee Fitch, her status as a guarantor of a bank loan that funded RRF's operations, and on the assertion that the 2014 and 2018 congressional farm bills were intended to protect family farms of which Fitch is a participant by virtue of her role as a spouse to a farmer and a part owner of RRF. But the NAP regulations control the issue and outcome here, not vague assertions about the general purpose of two farm bills that differentially addressed a multitude

---

[4] The problem with these alleged receipts, as with much of Fitch's argument, is that Fitch failed to develop a detailed factual record about how she, personally, shared in the risk of the crop. Instead, the established record largely focuses on Fitch's role as the spouse of a farmer, a partial owner in an incorporated entity, and a personal obligor on the line of credit for that entity.

of distinct federal farm programs. Indeed, when vaguely referencing the farm bills, Fitch appears to be mixing the eligibility rules of certain specified commodity programs with NAP, a disaster assistance program.

As to the NAP regulations themselves, they clearly distinguish between individuals, entities, and joint operations as it concerns NAP applicants. The regulations also define "persons" as having separate and distinct interests in the land or crop, exercising separate responsibility for that interest, and being responsible for the cost. 7 C.F.R. § 718.2; 7 U.S.C. § 7202(12). Fitch's interpretation essentially would make a producer of anyone or any entity that is tangentially tied to the success or failure of a farming operation, including banks who lend to a farming entity, the local farmer's supply store that sells feed and seed on credit, and any stockholder or member who holds an ownership interest no matter how small.

As the record makes clear, Fitch applied for NAP coverage in her personal name and capacity,[5] not in the name of RRF, not as an owner of RRF, and not in any other capacity such as a joint enterprise with her husband, RRF, or a family farm. And the reason for that decision was likely to avail herself of the financial benefits of being a socially disadvantaged farmer that were not otherwise available to RRF.

---

[5] Under the NAP Handbook, the mere act of purchasing NAP coverage individually is not sufficient to meet eligibility requirements. (Doc. 23-3 at 124.)

Given the dearth of evidence in the record concerning Fitch's personal share in the risk of the tomato crop, the Court cannot find, and does not, that the Director acted arbitrarily, capriciously, or not in accordance with the law in concluding that Fitch was not an eligible producer.[6] And for this Court, when reviewing an agency decision as it does here, it cannot re-weigh the evidence to reach a different result. *See Spring Creek Farming Co. v. Fed. Crop Ins. Corp.*, 653 F. App'x 728, 733 (11th Cir. 2016) (per curiam) ("But courts cannot re-weigh the evidence on agency review.").

## B. The Director did not act arbitrarily or capriciously in not applying the Finality Rule.

The second issue raised by Fitch concerns the Finality Rule. Fitch argues that it was error for the Director, the hearing officer, and the USDA not to apply the Finality Rule, which Fitch claims precluded the USDA from revisiting the 2016 claim in 2019 and then clawing back payments made to Fitch for the 2016 year and the two subsequent years in 2017 and 2018.[7] Relying upon the plain language of the Finality Rule, the USDA argues that Fitch's misrepresentation of her producer status

---

[6] While this is not an insurance claim dispute in the traditional sense, the current dispute operates much the same as those involving "insurable interests" in the things insured at the time of a property loss. *See, e.g.*, *Mt. Hebron Dist. Missionary Baptist Assoc. of Ala., Inc. v. Alexander*, 835 F. App'x 415 (11th Cir. 2020) (per curiam).

[7] Under 7 C.F.R. § 1437.16(c), if a person "[m]ade any fraudulent representation with respect to such program" or "[m]isrepresented any fact affecting a program determination," that person "is ineligible to receive assistance . . . for the crop year plus two subsequent crop years."

constituted an exception to the Finality Rule.

The Finality Rule is codified at 7 C.F.R. § 718.306. It provides that a "determination by an FSA State or county committee (or employee of such committee) becomes final on an application for benefits and binding 90 days from the date the application for benefits has been filed, . . . *unless any of the following exceptions exist*: . . (2) The determination was in any way based on erroneous, innocent, or purposeful *misrepresentation*; false statement; fraud; or willful misconduct by or on behalf of the participant...." 7 C.F.R. § 718.306(a)(2) (emphasis added).

Fitch first argues that "[t]he Agency failed to prove that any statement of Fitch was material to the award of benefits," and therefore, the Finality Rule should have applied. (Doc. 30 at 27.) The plain language of the Finality Rule illustrates the infirmity of Fitch's argument. The regulation is clear and creates an exception when "the determination was in any way based on erroneous, innocent, or purposeful misrepresentation." 7 C.F.R. § 718.306(a)(2). Fitch seems to argue that the Finality Rule requires that the misrepresented fact be the primary or moving force behind payment of the claim. But the rule is not written in such narrow terms. It only requires that the decision be based "in any way" on the misrepresentation, a meager hurdle for the USDA to meet.

Moreover, regardless of the weight given to the misrepresentation, there was substantial evidence in the record to find that Fitch made a misrepresentation and that it influenced her receipt of NAP payments. Below, Fitch provided no proof of input receipts, no proof of capital, equipment, or land contribution, no proof of actual personal management or labor, no proof that Fitch leased the land from RRF, and no proof that she shared in the crop had it been marketed. Indeed, she provided virtually nothing showing a personal, direct risk or share in the tomato crop. And the USDA presented evidence, primarily in the form of the NAP application certifications, the notice of loss, and the FSA representative's testimony before the hearing officer, that being a producer was necessary to be eligible to participate in NAP and receive payment.  It was not arbitrary, capricious, or otherwise erroneous for the USDA to later conclude that Fitch's misrepresentation about her producer status of the tomato crop was a representation that impacted her eligibility for payment. Indeed, eligibility is almost always the gateway issue in any claim decision; this claim was no different.

Fitch's second argument is even less appealing. Fitch also argues that she did not deliberately misrepresent anything related to her producer status. But she again runs into the plain language of the regulation. The plain language does not base its application on Fitch's level of knowledge or intent. Instead, the exception applies to all misrepresentations, even innocent ones.

Because the Court has already concluded that the Director did not act arbitrarily, capriciously, or otherwise in error in finding that Fitch was not an eligible producer and in upholding the hearing officer's decision, the Court also concludes, as it must, that the exception to the Finality Rule was appropriately applied. And by extension, pursuant to the exception, the USDA possessed the authority, as a sanction, to seek reimbursement of the payments made to Fitch from 2016 through 2018.

### C. The Director did not act arbitrarily or capriciously in denying equitable relief.

Finally, as another fallback position, Fitch argues the Director acted arbitrarily and capriciously in failing to grant her "equitable relief because she made a good faith effort to follow the requirements of the NAP program."[8] (Doc. 30 at 27.)

As the USDA correctly notes, the Director's ability to grant equitable relief can arise from two scenarios or tests:

> The Secretary may provide relief to any participant that is determined to be not in compliance with the requirements of a covered program,

---

[8] 7 U.S.C. § 7996(b) provides that "The Secretary *may provide relief* to any participant . . .". Thus, it is arguable that the Director's discretionary decision is not subject to judicial review because it is an area committed to agency discretion by law under the APA. *See* 5 U.S.C. § 701 (a)(2). It is also arguable that, under 7 U.S.C. § 7996(f), the Director's decision is not subject to judicial review. *See* 7 U.S.C. § 7996(f); *Harmon v. United States Dep't of Agric.*, 2014 WL 12684895, at *2, n.10 (D. Mont. Jan. 23, 2014), *aff'd* 666 F. App'x 698, 701 (9th Cir. 2016). *But see Hixson ex rel Hixson Farms v. United States Dep't of Agric.*, No. 15-CV-02061-RBJ, 2017 WL 2544637, at *5 (D. Colo. June 13, 2017) (arguing that 7 U.S.C. § 7996(f) does not apply and "7 U.S.C. § 6999 provides that any final determination by the Director is subject to judicial review under the APA. The Director's denial of Hixson's request for equitable relief is thus subject to judicial review.").

and therefore ineligible for a loan, payment, or other benefit under the covered program, if the participant—

> **(1)** acting in good faith, relied on the action or advice of the Secretary (including any authorized representative of the Secretary) to the detriment of the participant; or

> **(2)** failed to comply fully with the requirements of the covered program, but made a good faith effort to comply with the requirements.

7 U.S.C. § 7996(b).  *See also* 7 C.F.R. § 718.303.

The USDA first argues that Fitch failed to preserve and exhaust her argument that she is entitled to equitable relief under 7 U.S.C. § 7996(b) because she did not properly raise it with the NAD, including the hearing officer. But the USDA also acknowledges that the Director[9] and Secretary of the USDA have the sole authority to grant equitable relief under 7 U.S.C. § 7996(b). Requiring Fitch to raise an equitable relief claim to a hearing officer, who statutorily cannot grant such a request, conflicts with the pertinent statutes and defies the purposes of the exhaustion requirement; that is, to preserve judicial resources, improve the efficiency of the administrative process, and avoid futility. *See Johnson v. Meadows,* 418 F.3d 1152, 1156 (11th Cir. 2005) (Dubina, J.) (citing *Alexander v. Hawk,* 159 F.3d 1321, 1327 (11th Cir. 1998) (listing purposes of exhaustion)). *See also Ace Prop. & Cas. Ins.*

---

[9] The Director can grant equitable relief in the same manner and to the same extent as the Secretary. 7 U.S.C. § 6998(d).

*Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006) (explaining that a party may be excused from exhausting administrative remedies if further administrative procedures would be futile). Accordingly, the Court finds unpersuasive the USDA's position that Fitch had to first raise her equitable relief claim with the hearing officer. That, however, does not mean that Fitch should not create a factual record with the hearing officer if she intends to later present an equitable relief request to the Director on director review.

The next consideration is whether Fitch properly presented the equitable relief issue to the Director, a person who did have statutory authority to grant equitable relief under 7 U.S.C. § 7996(b). As the USDA notes, the *entirety* of Fitch's equitable relief request was simply a vague, boilerplate statement buried within certain documents, such as the fifth page of her Petition for Director Review. (*See, e.g.*, Doc. 23-3 at 92.) She made no argument, no affirmative showing, and no advocacy of her entitlement to equitable relief under either 7 U.S.C. § 7996(b) test to the Director. This failure to explicitly raise and argue it undoubtedly frustrates the administrative review process and undermines the goals of exhaustion.

The Court thus concludes that Fitch failed to properly preserve and exhaust her argument for why she is entitled to equitable relief under 7 U.S.C. § 7996(b). *Mahon*, 485 F.3d at 1254–55 ("Under ordinary principles of administrative law, a reviewing court will not consider arguments that a party failed to raise in [a] timely

fashion before an administrative agency."); *Fleming v. United States Dep't of Agric.*, 987 F.3d 1093, 1100 (D.C. Cir. 2021) ("On deferential review under the APA, *see* 5 U.S.C. § 706, we could not conclude that a decision by the Judicial Officer was arbitrary and capricious in failing to identify, raise, and resolve *sua sponte* an issue never presented to her.");  *Care Net Pregnancy Ctr. of Windham Cnty. v. United States Dep't of Agric.*, 896 F. Supp. 2d 98, 112 (D.D.C. 2012)("since issue exhaustion is required in administrative proceedings before the Appeals Division, Care Net had to raise more than just the 'substance' of its . . . claims. It was instead obligated to 'forcefully present[ ]' its argument before the Appeals Division, 'or else waive the right to raise those arguments on appeal' before this Court."); *Ballanger v. Johanns*, 495 F.3d 868, 869-870 (8th Cir. 2007) (finding that claimant had failed to exhaust with the NAD certain issues he was raising before the court).  Fitch's failure to preserve the issue forecloses her new argument to this Court even if the Director erred in his analysis of equitable relief. *See Fleming v. United States Dep't of Agric.*, 987 F.3d 1093, 1100 (D.C. Cir. 2021) ("Put differently, "[i]f a party flouts [agency] regulation[s] by failing to raise with the [agency] an issue that the party asserts in court, the court generally has no basis for 'setting aside' the [agency's] order (even assuming the administrative law judge erred.").

It is correct that the Director briefly discussed one of the equitable relief tests — detrimental reliance under 7 U.S.C. § 7996(b)(1) — in the determination of

Fitch's appeal. But he did not address the second; whether Fitch made a good faith effort to comply with NAP requirements. However, the Director's *sua sponte* consideration of 7 U.S.C. § 7996(b)(1) does not alter this Court's conclusion that Fitch failed to preserve an argument for remedies as it concerns both § 7996(b)(1) and (b)(2). *Amaya-Artunduaga v. United States Att'y Gen.,* 463 F.3d 1247, 1249–51 (11th Cir. 2006) (per curiam) (holding that the Board of Immigration Appeals' *sua sponte* consideration of an issue does not preserve it for appellate review and reasoning that the goals of exhaustion are better served by declining to review claims a petitioner, without excuse or exception, failed to present before the BIA, even if the BIA addressed the underlying issue). *See also Hooks v. Yandell*, No. 20-7061, 2021 WL 3557190, at *3 (10th Cir. Aug. 12, 2021) ("But because he does not develop this argument or present any legal authority, it is waived."); *United States v. George*, 448 F.3d 96, 99 (1st Cir. 2006) ("George's brief hints at additional due process arguments but fails to develop them sufficiently to warrant further mention.").

Regardless, the Court concludes that the Director's decision not to grant equitable relief based on Fitch's claim of good faith was not arbitrary, capricious, or not in accordance with the law because Fitch presented no evidence that she completed the NAP application based upon faulty or wrong advice received from the USDA or any agency representative. And the Director was not required to grant

equitable relief in the face of a factual circumstance where Fitch was not an eligible producer under NAP rules based upon a unilateral decision by Fitch to enroll in NAP in the manner that she did.

In short, the Court dismisses Fitch's challenge to the Director's failure to grant her equitable relief since Fitch failed to properly raise the issue with the Director. But even if she had, the Court concludes that the Director did not act arbitrarily, capriciously, or otherwise in error in not granting her this request.

## IV. CONCLUSION

For the preceding reasons, it is ORDERED as follows:

1. Appellant Amy Fitch's Motion for Summary Judgment (Doc. 30) is **DENIED**;

2. Appellant Amy Fitch's Motion to Strike[10] (Doc. 35) is **DENIED**;

3. The Appellees' Motion for Summary Judgment (Doc. 33) is **GRANTED**;

4. The appeals determination of the Director of the National Appeals Division is **AFFIRMED**; and

5. The Clerk of Court is directed to enter judgment in favor of Appellees,

---

[10] Through a Motion to Strike, Fitch takes exception to the USDA's brief, which Fitch interprets as accusing her of knowingly participating in fraudulent conduct. (Doc. 35.) The Court notes that the USDA's brief does not accuse Fitch of knowingly participating in fraud. Instead, the USDA cites the record in which testimony was provided that explained why Fitch's NAP claim was reviewed nearly three years after it was paid. Because the motion and the cited language in the USDA's brief are irrelevant to the outcome of this appeal, the Court denies the Motion to Strike.

United States of America, the Farm Service Agency, and the United States

Department of Agriculture, and close this file.

**DONE**, on this the 20th day of May, 2022.


             /s/ R. Austin Huffaker, Jr.
           R. AUSTIN HUFFAKER, JR.
           UNITED STATES DISTRICT JUDGE